**BANNUM, INC. and Bannum Properties, Inc., Plaintiffs–Appellants,**

v.

**CITY OF FORT LAUDERDALE, et al., Defendants–Appellees.**

No. 89–5022.

United States Court of Appeals, Eleventh Circuit.

May 21, 1990.

As Amended May 24, 1990.

Scott T. Wendelsdorf, Ogden & Robertson, Louisville, Ky., George K. Rahdert, Rahdert & Anderson, Randee K. Carson, St. Petersburg, Fla., for plaintiffs-appellants.

Robert H. Schwartz, Gunther & Whitaker, P.A., Ft. Lauderdale, Fla., for defendants-appellees.

Before FAY and EDMONDSON, Circuit Judges, and HALTOM *, District Judge.

FAY, Circuit Judge:

This case involves the significant concern for placing formerly incarcerated individuals back into communities, where they may earn a living and resume their lives outside of prison. Plaintiff-appellant Bannum, Inc. (Bannum) operated a supervised residential program for ex-offenders in Fort Lauderdale, Florida. Although the Fort Lauderdale zoning authorities initially approved Bannum's operation, this approval subsequently was withdrawn, and Bannum was unable to relocate its supervised residential program in Fort Lauderdale. Requesting a declaratory judgment and injunctive relief, Bannum brought this action against the City of Fort Lauderdale and various city administrative boards and officials. The district court granted summary judgment

---

* Honorable E.B. Haltom, Jr., U.S. District Judge for the Northern District of Alabama, sitting by designation.

to all defendants on the bases of absolute, qualified and municipal immunity. While we affirm the district court's granting summary judgment to the administrative and individual defendants, we vacate judgment as to the City of Fort Lauderdale and remand for consideration of constitutional issues and pendent state claims that have not been addressed.

## I. Factual Background

The Bannum plaintiffs-appellants, Kentucky corporations authorized to transact business in Florida, provide supervised residential programs nationally for ex-offenders in conjunction with the United States Bureau of Prisons. Program participants, convicted felons of non-violent crimes, have been incarcerated and are in the last stage of their sentence before release.[1] Participants are selected after screening in order to determine which eligible inmates appear likely to become productive members of society. During the day, the ex-offenders learn job-training skills and receive job counseling within the communities in which they desire to work and live upon completion of their sentence. At night, they reside in a specified, supervised residential facility.

In April, 1985, the Fort Lauderdale zoning authorities approved Bannum's use of leased rooms at the Areca Palms Motel, 905 N.E. 18th Avenue in Fort Lauderdale for its ex-offender, supervised residential program. The decision to issue an occupational license is based upon a description of the activities conducted on the subject premises as well as a determination that the zoning is proper.[2] The Areca Palms Motel is located in a zoning district which permits multi-family residences, apartment houses, motels, hotels, foster homes, mobile home parks, convents, fraternity and sorority houses. Fort Lauderdale, Fla., Code § 47–11.1 (1985). The zoning authorities insisted that Bannum locate its office elsewhere and obtain a license for that office. Bannum located its business office at 1776 East Sunrise Boulevard in Fort Lauderdale. Thereafter, the requisite city and county licenses were issued, and Bannum commenced operation of its ex-offender, supervised residential program at the Areca Palms Motel pursuant to a contract with the United States Bureau of Prisons.

Bannum's program participants used the motel only for overnight housing and engaged in their work-related activities during the day. Edward Reilly, manager of the Areca Palms Motel during 1985 through 1986 when Bannum operated its program there, testified by affidavit that the program participants used the motel as did the other guests.[3] He stated that the program participants were not restrained or held in custody and that he neither encountered any disturbance, vandalism or any problems whatsoever from them nor received any complaints of disorderly, abusive, threatening or unlawful conduct during their residence.[4] Reilly described the Bannum participants as model residents and stated that he "wished that all the motel's guests were as well-behaved and quiet as were the Bannum participants."[5]

Although Bannum's program had operated without incident or interference from the city, by December, 1985, with knowledge of the existence of the program in their community, neighbors and police officers objected to the housing of ex-offenders at the Areca Palms Motel.[6] Subsequently, the city reversed its previous determination that zoning was proper and decided that Bannum's use of the Areca Palms Motel as residential housing for its program participants constituted a "custodial facility" requiring a special use permit under section 47–11.1.1.(d) of the Fort

1. Essentially, the participants in Bannum's program have been convicted of white-collar crimes, such as fraud and tax evasion.

2. Deposition of Janice W. Mink at 12–13. Supp. R1–70.

3. Affidavit of Edward Reilly. R1–73–1.

4. *Id.* at 2.

5. *Id.*

6. Affidavits of David A. Lowry. Supp. R1–64–3–5, 30; Newspaper articles. Supp. R1–64–45–46.

Lauderdale Code of Ordinances.[7] Significantly, the "custodial facility" designation existed in the Fort Lauderdale Code of Ordinances in April, 1985, when Bannum sought and received licensing by the city for its program at the Areca Palms Motel.[8] The term "custodial facility" is not defined in the Fort Lauderdale Code of Ordinances.[9]

Although Bannum held occupational licenses to conduct its supervised residential program at the Areca Palms Motel, the Fort Lauderdale Enforcement Board cited the motel owner, Gordon Johnson, with a notice of violation and threatened to impose fines of $250.00 per day until he evicted Bannum and the residing program participants.[10] Areca Palms Motel manager Reilly by affidavit stated that city officials told him that he must remove Bannum, ending the matter, or incur the daily fine.[11] Following the threat of a fine, Reilly ordered Bannum to vacate the rooms assigned to it on December 19, 1985.[12]

Motel owner Johnson appealed the decision of the Code Enforcement Board to the Board of Adjustment, the city's highest policymaking body regarding zoning. The appeal was heard by the Fort Lauderdale Board of Adjustment on February 12, 1986.[13] Witnesses discussed various aspects of Bannum's voluntary, supervised residential program. Participants had to be in their rooms by midnight, signified by a punch card. Lody Leslie, supervisor of Bannum's program, explained that counseling occurred at the Bannum business office and that the program participants merely spent the night at the motel, where there were no guards or custodians. Frank Paglimanite, the Fort Lauderdale code compliance inspector who investigated the premises and determined that the Areca Palms Motel violated the city ordinance because it was a custodial facility, stated that he considered a curfew equivalent to detention. He conceded, however, that he had not cited motels, housing visiting football teams with 11:00 P.M. curfews, as being

**7.** The Fort Lauderdale Code of Ordinances, requiring special use permits for particular land uses, provides with regard to "custodial facilities" as follows:

Whenever application is made for a building permit to erect or enlarge any building, or any land is proposed to be used for:

. . . .

(d) Custodial facilities, other than detention facilities, licensed by the State of Florida Department of Health and Rehabilitative Services or other governmental agency having jurisdiction over the facility, such as emergency shelter care facilities, residential child care facilities, adult congregate living facilities, group homes, residential habilitation centers, drug abuse treatment and education centers, and other similar uses;

no permit shall be issued and no land shall be used for such purpose until the use of such site for such purpose has been approved by resolution of the city commission, after a recommendation by the planning and zoning board. The actions of both the planning and zoning board and the city commission shall be based upon consideration of the following factors:

(1) Impact on the abutting properties from the proposed facility;

(2) The extent to which the proposed facility will serve existing needs within the community;

(3) Compatibility of the proposed facility with existing land uses in the surrounding neighborhood;

(4) Conformance by the proposed facility with all applicable federal, state and local laws and regulations.

Fort Lauderdale, Fla., Code § 47–11.1.1 (1985).

**8.** *See* Affidavits of David A. Lowry. Supp. R1–64–1, 3, 29–31; Affidavit of Arnold R. Rich. Supp. R1–64–9–10; Affidavit of Paul Troutman. Supp. R1–64–20; Affidavit of Marvin R. O'Koon. Supp. R1–64–27; Memorandum from Paul Troutman to Ft. Lauderdale CTC File. Supp. R1–64–63–64; Deposition of Major Edgar Thomas White at 4–9. Supp. R1–70; Deposition of Chief Joseph C. Gerwens at 22–23. Supp. R1–70.

**9.** Deposition of Janice W. Mink at 7. Supp. R1–70.

**10.** City of Fort Lauderdale Code Enforcement Board Notice of Violation and Notice to Quit and Vacate to Bannum (Dec. 19, 1985). Supp. R1–64–58–59; Affidavit of David A. Lowry. Supp. R1–64–4–5; Affidavit of Paul A. Troutman. Supp. R1–64–25.

**11.** Affidavit of Edward Reilly. R1–73–2.

**12.** *Id.*

**13.** Minutes of the Fort Lauderdale Board of Adjustment Meeting (Feb. 12, 1986). Supp. R1–64–65–76.

custodial facilities. "[I]t was just a particular type of custodial facility which offended his sensibility as the inspector." [14]

Furthermore, a Fort Lauderdale police sergeant, who inspected the motel premises on three occasions for compliance with local and state license permits, reported that he could not identify participants in Bannum's program as prisoners. His rather unique definition of custodial facility was responsibility to someone, rules or morals and not physical restraint. Residents in the vicinity of the Areca Palms Motel opposed housing convicts at the motel because of concerns regarding an increase in crime and a decrease in the quality of their neighborhood life. While there had been four stolen cars and vandalism in the area since Bannum's program had been in operation, no evidence was given that program participants were involved. Nearby condominium owners considered that the use of the Areca Palms Motel for ex-offenders would have a depreciating effect on the property values of their condominiums, although no supporting evidence was offered. An area resident complained that housing convicts at the motel would give unsuspecting tourists a negative attitude toward Fort Lauderdale. A unanimous vote of the Board of Adjustment upheld the citation of the Areca Palms Motel as being in violation of the custodial facility ordinance because it housed Bannum's program participants.

Motel owner Johnson appealed the decision of the Board of Adjustment to the Broward Circuit Court. The Code Enforcement Board approved the agreement between the City of Fort Lauderdale and Johnson that no fine would be levied on the property until thirty days after a judicial ruling. Bannum, however, already had vacated the Areca Palms Motel. Subsequently, the motel owner's appeal was dismissed, and no fines were imposed by the city.

Because of the contention of the City of Fort Lauderdale that Bannum was operating its program in an improper zone and the enforcement actions against Bannum and the motel owner, the Bureau of Prisons removed residents from the Areca Palms Motel on March 5, 1986.[15] In an effort to continue operations and to protect its contract with the Bureau of Prisons, Bannum, working with city officials, located an alternate site at 400 S.E. 31st Street, an eight-unit apartment complex in Fort Lauderdale.[16] Plaintiff-appellant Bannum Properties, Inc. contracted to purchase this property for the purpose of leasing apartments to Bannum for the residential and administrative functions of its program.[17] Bannum filed a site plan and an application for the new location with the Planning and Zoning Board in order to obtain the requisite special use permit.[18]

On October 9, 1986, the staff of the Planning and Zoning Board recommended approval of the plan subject to conditions outside of the zoning regulations.[19] Bannum's general counsel appeared before the Planning and Zoning Board on October 15, 1986, where he encountered concern for the perception of a disproportionate concentration of social programs in Fort Lauderdale and reluctance to grant approval without imposing additional conditions other than the zoning requirements.[20] The conditions

**14.** *Id.* at 70–71.

**15.** Affidavit of David A. Lowry. Supp. R1–64–6.

**16.** After consultation with various Fort Lauderdale officials, including city attorneys and city planner Mink, Bannum's general counsel was directed to consider a site in the southwest corner of the city, the Old Federal Highway District. Affidavit of Marvin R. O'Koon. Supp. R1–64–11. City planner Mink informed the general counsel that the New Federal Highway would segregate that section of the city and "that no one cared about it." *Id.*

**17.** Affidavit of David A. Lowry. Supp. R1–64–6; Affidavit of Marvin R. O'Koon. Supp. R1–64–12.

**18.** *Id.;* City of Fort Lauderdale Planning and Zoning Board, Application for Approval of Development Plan. Supp. R1–64–92–95.

**19.** Affidavit of David A. Lowry. Supp. R1–64–6; Affidavit of Marvin R. O'Koon. Supp. R1–64–12.

**20.** Affidavit of David A. Lowry. Supp. R1–64–6–7; Affidavit of Marvin R. O'Koon. Supp. R1–64–12; *see* Affidavit of Paul A. Troutman.

included exclusion of persons from the program who had been diagnosed as having Alzheimer's disease, persons who had been treated at mental institutions within the past five years, and requiring Bannum to provide to the Fort Lauderdale police a daily listing of the residents in the program.[21] Even after imposing the additional conditions, the Planning and Zoning Board voted not to recommend approval of the plan to the city commission. In a subsequent letter, deputy city attorney Thomas J. Ansbro, Jr. explained to Bannum's general counsel Marvin R. O'Koon the concern of the city commission for the perceived disproportionate concentration of social service programs in Fort Lauderdale:

> As I mentioned to you recently, as a general proposition, the City Commission has expressed the opinion that the City has accommodated a disproportionate share of social service facilities, compared to other cities and areas in Broward County. This opinion has been reconfirmed by the Deputy Chief of Police....

Letter from Thomas J. Ansbro to Marvin R. O'Koon (Oct. 24, 1986). Supp. R1–64–84.

Following this negative vote and letter, Bannum's general counsel met with the Fort Lauderdale deputy city attorney, city planner Mink and Larry McSwain, community programs manager for the Federal Bureau of Prisons, in an attempt to resolve the city's problems concerning Bannum's operation of its supervised residential program at the new location.[22] Discussion revealed that the only significant problem was the requirement that the police department be given a daily list of program residents.[23] Upon contacting the Bureau of Prisons regarding this concern, Bannum's general counsel and McSwain were informed that prison policy would not allow the release of the identities of program participants. Subsequently, Bannum's general counsel received a letter from the Fort Lauderdale deputy city attorney stating his belief that the city wanted the right to reject a proposed program participant based on legitimate concerns for community safety.[24]

On November 10, 1986, Bannum received from the Bureau of Prisons a cure notice according it ten days in which to show that its program was zoned properly or its contract would be terminated.[25] The Fort Lauderdale city commission declined to place Bannum's request for consideration of its alternative site for conducting its supervised residential program on the agenda for its meeting on November 18, 1986.[26] The delay by the city commission extended their decision beyond the date for Bannum to obtain approval by the Bureau of Prisons. On November 19, 1986, the Bannum plaintiffs filed their complaint seeking declaratory judgment, temporary and permanent injunctive relief to prohibit the city's interference with Bannum's use of the 400 S.E. 31st Street property for its supervised residential program, and requested monetary damages.

Following denial of injunctive relief by the district court, the Fort Lauderdale city commission disapproved Bannum's application for a special use permit for the 400 S.E. 31st Street location. Thereafter, the Bureau of Prisons cancelled Bannum's con-

Supp. R1–64–22; Newspaper articles. Supp. R1–64–37–43; Memorandum from Captain Edgar T. White to Janice Mink. Supp. R1–64–82; Memorandum from J.C. Gerwens to Janice Mink. Supp. R1–64–83; Letter from Thomas J. Ansbro, Jr. to Marvin R. O'Koon. Supp. R1–64–84–85; Deposition of Major Edgar Thomas White at 10–13, 18, 20. Supp. R1–70; Deposition of Chief Joseph C. Gerwens at 9–17, 19–21, Exs. 1–3. Supp. R1–70; Deposition of Janice W. Mink at 39–40, 45–48. Supp. R1–70.

21. Affidavit of David A. Lowry. Supp. R1–64–6; Affidavit of Marvin R. O'Koon. Supp. R1–64–12.

22. Affidavit of Marvin R. O'Koon. Supp. R1–64–13.

23. *Id.*

24. Letter from Thomas J. Ansbro, Jr. to Marvin R. O'Koon (Oct. 24, 1986). Supp. R1–64–84.

25. Affidavit of Marvin R. O'Koon. Supp. R1–64–13–14.

26. *Id.* at 13.

tract for Fort Lauderdale. During the pendency of this litigation, the City of Fort Lauderdale enacted an ordinance placing a moratorium on "the whole generic term of social service, residential facilities." [27]

## II. Prior Procedure

The Bannum plaintiffs' complaint alleges violations of 42 U.S.C. sections 1981, 1983 and 1985 as well as Article VI and the Fifth and Fourteenth Amendments to the United States Constitution, and bases jurisdiction on 28 U.S.C. sections 1331, 1332, 1343(a)(3) and 1343(a)(4). Initially requesting a temporary restraining order, the Bannum plaintiffs subsequently moved for a preliminary injunction and provided the district court with additional documentation. The district court denied Bannum's motion for preliminary injunction without considering the merits of the case because it determined that plaintiffs failed to meet the prerequisites for preliminary injunctive relief. *Bannum, Inc. v. City of Fort Lauderdale*, 657 F.Supp. 735 (S.D.Fla.1986). The district court, however, did indicate its reaction to Bannum's constitutional equal protection contention at that early stage of the proceedings:

> Indeed, although the ex-offender status of the residents may be an objectionable category for equal protection purposes, it may also be the case that the Defendants will be able to show that the zoning restriction is rationally based, and that the citizens of the City of Fort Lauderdale have a legitimate interest in keeping partially incarcerated persons off neighborhood streets.

*Id.* at 738.

Defendants moved to dismiss the action and included among their grounds for dismissal, legislative or absolute immunity as to the local official defendants, qualified immunity as to the local governmental officials charged with discretionary responsibilities, and municipal immunity as to the municipality, its boards, agencies and supervisory personnel. No answer to plaintiffs' complaint has been filed by any of the defendants. After receiving the plaintiffs'

response, the district court issued an order to show cause why the motion to dismiss should not be granted. The court instructed: "Specifically, Plaintiff shall offer factual proof that Defendants were not acting in a legislative role or that Defendants were not acting within the scope of their discretionary authority. *See Espanola Way Corp. v. Meyerson*, 690 F.2d 827 (11th Cir. 1982) [, *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983) ]." R1-63. In response, plaintiffs filed an extensive compliance appendix.

Following review of plaintiffs' response to the show cause order, the district court advised the parties that it would consider the motion to dismiss as a motion for summary judgment:

> On the face of the pleadings heretofore filed, it appears that the Defendants were acting within the legitimate scope of their legislative authority. This Court is mindful of the fact that Plaintiff voluntarily relinquished its right to conduct discovery prior to the resolution of Defendant's Motion to Dismiss. Moreover, the Court acknowledges that the scope of legislative immunity is fact-intensive and would more properly be resolved under the factual standard of a Motion for Summary Judgment. Accordingly, it is hereby
>
> ORDERED AND ADJUDGED that this Motion will be treated as a Motion for Summary Judgment as to the issue of immunity. The parties shall have 45 days from the date of this Order during which to conduct expedited discovery solely regarding the applicability *vel non* of legislative immunity to the Defendants in this cause. The parties shall submit memoranda addressing the legal theories at issue and shall direct the Court's attention to specific admissible evidence tending to establish or negate the existence of a genuine, material issue of fact as to the applicability of immunity under the facts of this cause.

R1-66-1-2 (footnote omitted). Plaintiffs responded to defendants' motion to dismiss, converted by the court into a summary

---

**27.** Deposition of Janice W. Mink at 48. Supp.     R1-70.

judgment motion. Thereafter, the district court granted summary judgment to all defendants on the bases of absolute, qualified and municipal immunity, and entered final judgment. R1–74, 75.

On appeal, plaintiffs-appellants pursue the district court's granting summary judgment to the City of Fort Lauderdale only and do not question summary judgment as to the municipal governing bodies and individual defendant officials. Plaintiffs-appellants raise two issues on appeal. First, they contend that, through affidavits, depositions and exhibits, they showed or created a reasonable inference that the city, acting through its planning and zoning board, city commission and police department, arbitrarily and unconstitutionally enforced zoning ordinances against Bannum in violation of 42 U.S.C. section 1983. Second, plaintiffs-appellants complain that the district court erred in granting summary judgment as to their non-section 1983 claims. Furthermore, plaintiffs-appellants note that the district court allowed discovery on the narrow issue of legislative immunity solely and that full development of the facts underlying Bannum's claims as to the City of Fort Lauderdale will require additional discovery. Defendant-appellee the City of Fort Lauderdale has contended on appeal that this case is moot because the Fort Lauderdale Code of Ordinances has been amended to delete the custodial facility category. Fort Lauderdale, Fla., Code § 47–11.1.1. (1989).

### III. Analysis

#### A. Standard of Review

Our review of the district court's grant of summary judgment is plenary, and we apply the same legal standards. *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir. 1989); *Livernois v. Medical Disposables, Inc.,* 837 F.2d 1018, 1021–22 (11th Cir. 1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once a summary judgment motion has been made properly by demonstrating the absence of genuine issues of material fact, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).

Corresponding to directed verdict analysis, a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987); *Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559, 1572 (11th Cir.1987). "[T]he substantive law will identify which facts are material;" the district court must consider the evidence under the substantive evidentiary burden. *Anderson,* 477 U.S. at 248, 254, 106 S.Ct. at 2510, 2513. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau,* 835 F.2d 855, 856 (11th Cir.1988) (per curiam); *Everett,* 833 F.2d at 1510. If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment. *Barfield,* 883 F.2d at 933–34; *Samples ex rel. Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). Accordingly, we must determine if genuine issues of material fact exist in this case after examining the governing substantive law. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *Everett,* 833 F.2d at 1510.

#### B. The Grant of Summary Judgment as to Municipal Liability under Section 1983

In order to prevail in a civil rights action under section 1983, "a plaintiff must make

a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." [28] *Dollar v. Haralson County,* 704 F.2d 1540, 1542–43 (11th Cir.), *cert. denied,* 464 U.S. 963, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983); *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Barfield,* 883 F.2d at 934; *Everett,* 833 F.2d at 1510. While it is not a source of substantive rights, section 1983 provides a method for vindicating federal rights conferred by the Constitution and federal statutes. *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979); *Barfield,* 883 F.2d at 934. We have concluded that the district court misinterpreted the municipal liability under the second element of a section 1983, prima facie case and erred in not progressing to consideration of the alleged constitutional violations comprising the first element of a prima facie case.

■ Although no answer had been filed by the City of Fort Lauderdale and discovery was limited to the issue of qualified immunity, the district court granted summary judgment to the City of Fort Lauderdale because it concluded that the facts revealed only *respondeat superior* liability against the city, and did not address the constitutional merits of the case. The Supreme Court has held that municipalities are persons to whom section 1983 applies. *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). With respect to civil rights violations, municipalities are not entitled to absolute or qualified immunity. *Owen v. City of Independence,* 445 U.S. 622, 638,

100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980); *Monell,* 436 U.S. at 701, 98 S.Ct. at 2041.

■ Under section 1983, local governments can be sued directly for monetary, declaratory or injunctive relief, when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" and when constitutional deprivations result from "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. A municipality, however, cannot incur liability in a section 1983 action on a *respondeat superior* theory merely because it employs a tortfeasor. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. The Supreme Court has clarified and reiterated the guiding principles for determining when a single decision may be sufficient to establish unconstitutional municipal policy under section 1983:

(1) Municipalities have section 1983 liability only for acts officially sanctioned or ordered by the municipality.

(2) Only those municipal officials who have " 'final policymaking authority' " may subject the municipality to section 1983 liability for their actions.

(3) The determination of whether or not a particular official has " 'final policymaking authority' " is governed by state law, including valid local ordinances and regulations.

(4) The challenged action must have been taken pursuant to a policy adopted by the official or officials responsible for making policy in that particular area of the city's business, as determined by state law.

*City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 125, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (plurality opinion) (citing and quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–83, 106 S.Ct. 1292, 1298–

---

**28.** Section 1983 provides in pertinent part:
  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
  42 U.S.C. § 1983 (1982).

1300, 89 L.Ed.2d 452 (1986) (plurality opinion)); *see, e.g., Arnold v. Bd. of Educ.,* 880 F.2d 305, 316 (11th Cir.1989); *Messick v. Leavins,* 811 F.2d 1439, 1443 (11th Cir. 1987).

" '[T]he identification of policymaking officials ... is not a question of fact in the usual sense' and thus not a suitable matter for the jury to decide." *Owens v. Fulton County,* 877 F.2d 947, 950 (11th Cir.1989) (per curiam) (quoting *Praprotnik,* 485 U.S. at 124, 108 S.Ct. at 924). Using as an example the municipal legislative body, the Court has explained that "[n]o one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy." *Pembaur,* 475 U.S. at 480, 106 S.Ct. at 1298 (citing *Owen,* 445 U.S. 622, 100 S.Ct. 1398; *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (Both cases involve actions by city councils.)). In *Praprotnik,* the Court discussed situations where the municipal policymaker delegates policymaking authority. *Praprotnik,* 485 U.S. at 126–27, 108 S.Ct. at 925; *see Parker v. Williams,* 862 F.2d 1471, 1478 (11th Cir.1989). Recognizing that "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law,' " the Court made clear that municipal policymakers cannot evade liability for unconstitutional acts by delegation. *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 (quoting *Adickes,* 398 U.S. at 167–68, 90 S.Ct. at 1613–14). Furthermore, "the authority to make municipal policy is necessarily the authority to make *final* policy." *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 (emphasis in original). Therefore, ratification by the authorized policymakers of a subordinate's reasoning and decision is "chargeable to the municipality because their decision is final." [29] *Id.*

Guided by these principles, we analyze the facts in this case. Bannum has challenged a Fort Lauderdale ordinance requiring it to acquire a special use permit to operate its supervised residential program as a custodial facility. Although Fort Lauderdale originally granted Bannum an occupational license for its program and there has been no evidence of any misconduct from any of the program participants at the Areca Palms Motel, the city through its Code Enforcement Board officially changed its position and declared that the motel housing of Bannum's program participants was a custodial facility and inappropriate for the particular zone without a special use permit. The decision of the Code Enforcement Board was appealed to the highest city policymaking body with regard to zoning code interpretation, the Board of Adjustment, which affirmed the decision of the Code Enforcement Board. Accordingly, the decision to abrogate the previously issued occupational license and to prohibit Bannum's continued use of the motel property for housing its community treatment program participants became an official city decision. Bannum's efforts to operate at an alternative location in the city were thwarted by widespread sentiment throughout the city against permitting new social service programs within the city limits. This concern became articulated, adopted and implemented as policy by the highest official policymaking components of the city government, including the city commission, the police department and the city's planning and zoning officials and ad-

---

**29.** Further explicating ratified subordinate policymaking, the Court stated:

It would be a different matter if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker. It would also be a different matter if a series of decisions by a subordinate official manifested

a "custom or usage" of which the supervisor must have been aware. In both those cases, the supervisor could realistically be deemed to have adopted a policy that happened to have been formulated or initiated by a lower ranking official.

*Praprotnik,* 485 U.S. at 130, 108 S.Ct. at 927 (citation omitted).

ministrators. Ultimately, the city commission, the highest policymaking body of Fort Lauderdale, officially denied Bannum permission to operate its residential program in Fort Lauderdale.

▪ Under the controlling law, there are numerous genuine issues of material fact raising more than an inference regarding the municipal liability of Fort Lauderdale to prevent summary judgment on that issue, comprising the second element of a prima facie case under section 1983. Therefore, we vacate the district court's grant of summary judgment to the city on the inapplicable basis of *respondeat superior*. Pursuant to *Praprotnik* and *Pembaur*, we hold that the defendant-appellee City of Fort Lauderdale was responsible under color of law for its specific decisions regarding Bannum's location of its residential program in Fort Lauderdale. On remand, the second element of a prima facie case under section 1983 shall be considered satisfied.

The district court has neither addressed plaintiffs-appellants' allegations of constitutional deprivations nor allowed discovery on these issues to enable plaintiffs-appellants to develop their case fully. This case was terminated at a premature stage. On remand, the district court shall provide appropriate time for discovery so that both parties may obtain the evidence necessary to present the facts and law relevant to the district court's determination of the alleged constitutional violations. The district court then will be in a position to determine if plaintiffs-appellants have established the first element of a prima facie case under section 1983, or if their allegations of con-

stitutional violations warrant trial.[30] *Barfield*, 883 F.2d at 934; *Wideman v. Shallowford Community Hosp., Inc.,* 826 F.2d 1030, 1032 (11th Cir.1987).

## C. Failure to Address Non–Section 1983 Claims

▪ Because it granted summary judgment based upon a *respondeat superior* theory of liability as to defendant-appellee the City of Fort Lauderdale, the district court did not address plaintiffs-appellants' requests for declaratory and permanent injunctive relief and its pendent state claims. Plaintiffs-appellants seek to enjoin the City of Fort Lauderdale from implementing and enforcing zoning regulations designating Bannum's residential program as a custodial facility, requiring special use permits, and otherwise interfering with the lawful operation of programs such as Bannum's. While Bannum has been precluded from operation in Fort Lauderdale and has lost its contract with the Bureau of Prisons for that city, Bannum remains in the business of providing and operating supervised residential housing for ex-offenders in Florida and elsewhere, and seeks judicial protection should it attempt to open another program in Fort Lauderdale. Bannum's pendent state claims involve interference with contract and unlawful taking.

Although the City of Fort Lauderdale has amended its zoning ordinance to remove the custodial facility category, the facts of this case show that the city government can change positions, which has been reflected in its application of zoning ordinances. The concerns in this case

---

**30.** We observe that the district court's consideration of plaintiffs-appellants' constitutional claims regarding the subject special use permit ordinance, including violation of equal protection, facially and as applied, and due process, should involve analysis of the analogous case of *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In *Cleburne,* the Supreme Court held that a municipal ordinance requiring a group home for the mentally retarded to obtain a special use permit to operate and the city's subsequent denial of the home's application for such a special use permit was an unconstitutional violation of equal protection as applied because other sim-

ilar residential uses of property in the area did not require a special use permit to operate. Noting that the city council apparently had been concerned or influenced by the prevailing negative attitude of property owners and community fears, the Court stated:

> [M]ere negative attitudes, or fear, unsubstantiated by factors which are properly cognizable in a zoning proceeding, are not permissible bases for treating a home for the mentally retarded differently from apartment houses, multiple dwellings, and the like.

*City of Cleburne,* 473 U.S. at 448, 105 S.Ct. at 3259.

are that Bannum to date continues to be precluded from operation in Fort Lauderdale, and that the rejection of its application for yet another site is capable of recurring. *See Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); *Donovan v. Sarasota Concrete Co.,* 693 F.2d 1061, 1064 n. 4 (11th Cir.1982). Concurrent with its consideration of the constitutional issues in this case, the district court has jurisdiction over the pendent state claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *L.A. Draper & Son v. Wheelabrator–Frye, Inc.,* 735 F.2d 414, 427 (11th Cir.1984).

## IV. Conclusion

Bannum, in conjunction with the Bureau of Prisons, provides an innovative and successful alternative to incarceration for qualified inmates in the last stage of their sentence by assisting their integration into the communities where they will return to live and work upon the completion of their sentences. Not only does Bannum's supervised residential housing for its program participants alleviate prison overcrowding, but also it serves to assist ex-offenders to gain employment upon their release so that they may become productive members of society. While the concerns of the Fort Lauderdale residents are understandable and properly considered by the city government, the apparent attempt by Fort Lauderdale to foreclose Bannum's program within its city limits must be analyzed carefully for constitutional violations. Although we AFFIRM the district court's granting summary judgment to the various municipal governing bodies and individual officials on the bases of absolute and qualified immunity, we VACATE the grant of summary judgment to the City of Fort Lauderdale on the basis of *respondeat superior* liability and REMAND this case to the district court for further proceedings consistent with this opinion.