912 F.2d 1379
 Prod.Liab.Rep.(CCH)P 12,592
Dr. Steven HOFFMAN, as Personal Representative of the Estate
of Milton Hoffman and Lillian Hoffman, Plaintiffs-Appellants,
v.
ALLIED CORP., et al, Defendants,
Armstrong World Industries, Inc., Fibreboard Corp., GAF
Corp., H.K. Porter Co., Inc., Keene Corp., Owens-Illinois,
Inc., Raymark Industries, Inc., Southern Textile Corp.,
Turner & Newall, Limited, Defendants-Appellees.
 No. 89-5764.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 26, 1990.
 
 Reed A. Bryan, McCune, Hiaasen, Crum, Gardner & Duke, Fort Lauderdale, Fla., for plaintiffs-appellants.
 Gregory H. Maxwell, Zisser, Robison, Spohrer, Wilner & Harris, Jacksonville, Fla., for Armstrong, et al.
 Fortson & White, Atlanta, Ga., for H.K. Porter and Southern Textile.
 Tracy E. Tomlin, Stinson, Lyons, Gerlin & Bustamante, Miami, Fla., for Owens-Illinois, Inc. and Fibreboard Corp.
 Appeal from the United States District Court for the Southern District of Florida.
 Before TJOFLAT, Chief Judge, FAY, Circuit Judge, and HOFFMAN*, Senior District Judge.
 FAY, Circuit Judge:
 
 
 1
 This case concerns a personal injury claim for damages arising out of an alleged incidental exposure to asbestos products over 40 years ago. Finding that plaintiffs-appellants Milton and Lillian Hoffman could not prove that Milton Hoffman either worked with or in close proximity to products manufactured by defendants-appellees Armstrong World Industries, et al. ("Armstrong"), and therefore failed to raise a genuine issue of material fact, the district court granted summary judgment for Armstrong. The Hoffmans appeal. Because we have determined that genuine issues of material fact exist, we reverse and remand for proceedings consistent with this opinion.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Milton Hoffman[1] and his wife, Lillian, are both Florida residents. Milton Hoffman worked as a lathe operator in the Brooklyn (N.Y.) Naval Shipyard's ordnance repair shop[2] for approximately 14 months during World War II. The Brooklyn Naval Shipyard was a large, waterfront facility where warships were overhauled during the war. The facility contained many buildings, as well as a dry dock. Milton Hoffman worked in Building 5, where the ordnance repair shop was located. The dry dock was near the water's edge, approximately 300 to 400 feet from Building 5.
 
 
 3
 Armstrong manufactured asbestos products, primarily thermal insulation, that were in use when Milton Hoffman worked at the shipyard. Further, Armstrong concedes that these products were in use at the time in various locations within the shipyard, especially on ships being repaired at the dry dock. Both parties agree, however, that no asbestos products were used within the ordnance repair shop itself.
 
 
 4
 Leo Rapacilo was an electrician who worked in close proximity to asbestos products on the ships in dry dock at the shipyard. In addition to working on the ships, he also occasionally worked in the ordnance repair shop in Building 5. (R 7-178, Rapacilo Affidavit). According to Rapacilo, the asbestos products used at the dry dock in their ordinary use created considerable dust in the air, and it was not unusual for dust to cover his clothing, hair, and exposed skin, even though he did not work directly with the insulation products. (R 7-178, Rapacilo Affidavit).
 
 
 5
 Milton Hoffman stated in an affidavit that the only method to ventilate the ordnance repair shop was to open its windows. (R 7-178, Hoffman Affidavit). These windows remained open during a substantial portion of the year, and dust could blow into the shop through the windows. (R 7-178, Hoffman Affidavit). The prevailing winds blew from the water's edge across the dry dock into the ordnance repair shop. (R 7-178, Hoffman Affidavit). Mr. Hoffman claimed that the breezes carried asbestos dust from the ships at the dry dock into the shop where he worked. (R 7-178, Hoffman Affidavit). Further, insulators and other shipyard workers, like Mr. Rapacilo, occasionally came into or worked in the ordnance repair shop, and they were sometimes covered with dust. (R 7-178, Hoffman Affidavit).
 
 
 6
 In 1983, a biopsy was performed on part of Milton Hoffman's lung. A pathologist at Mt. Sinai Medical Center in Miami Beach diagnosed him as suffering from pleural malignant mesothelioma.[3] In April of 1987, Dr. Mario Saldana also diagnosed Mr. Hoffman's condition as malignant mesothelioma.
 
 
 7
 In an affidavit filed by Armstrong, Dr. John Legowik admitted that the only known cause of mesothelioma is asbestos exposure, although he did not rule out the possibility of other causes. (R 3-73, Legowik Affidavit (emphasis in original)). Dr. Saldana, in his affidavit, opined that mesothelioma could result from very minuscule or minor exposures to asbestos dust, unlike asbestosis or other asbestos related diseases which require more substantial exposure. Both Dr. Legowik and Dr. Saldana agreed that in 85 percent of all documented mesothelioma cases the patients had been exposed to asbestos. In the other 15 percent of mesothelioma cases in which no direct history of asbestos exposure existed, Dr. Saldana attributed the cause to the very light exposure required to produce the disease. In his opinion, most, if not all, of those cases were caused by asbestos exposure despite the lack of available reliable history of asbestos exposure. Dr. Legowik refused to attribute mesothelioma to asbestos exposure, absent a finding of asbestos bodies in the patient's lung tissue by open lung biopsies or autopsy biopsy.[4] However, the Hoffmans opposed an autopsy upon Mr. Hoffman's death for religious reasons. Further, Dr. Saldana stated that an autopsy was unnecessary to determine whether mesothelioma was caused by asbestos exposure.[5]
 
 
 8
 On March 30, 1987, the Hoffmans filed suit in federal district court for the Southern District of Florida. The complaint sounded in negligence, warranty, and strict liability, and also charged Armstrong with conspiracy to conceal information regarding the dangerous nature of asbestos. On July 14, 1988, upon motion for summary judgment by Armstrong, the district court referred the matter to the United States Magistrate for consideration. The Magistrate recommended that the district court grant the summary judgment based upon the discovery materials available at the time.[6] According to the Magistrate, nothing in the record could prove that Armstrong's products were being used in Milton Hoffman's "work area." (R 7-162). Following the Magistrate's report and recommendation, the district court gave the Hoffmans an opportunity to supplement the record by filing affidavits to avoid final summary judgment.
 
 
 9
 In addition to the affidavits of Leo Rapacilo and Milton Hoffman noted above, the Hoffmans offered an affidavit by Dr. Joseph Wagoner. Dr. Wagoner, an epidemiology expert, opined that:
 
 
 10
 asbestos was the substantial causal factor in the induction of Milton Hoffman's malignant mesothelioma of the pleura. The dusts and fibers from defendants' products which have been identified and shown to have been in general use in the shipyard during the time of Mr. Hoffman's tenure there are the substantial causal factors of his said disease.... [T]he use of asbestos materials in shipyards releases asbestos dust into the air which typically hangs in the air and permeates the air throughout the work area, including areas removed from its point of release so that persons working in adjacent areas near the point source of asbestos dust could inhale asbestos fibers. Once released into the air, asbestos fibers drift with air currents thus spreading over time throughout a large area. Asbestos dust and fibers remain floating in the air once released and individuals not working directly with asbestos products are at risk of becoming diseased.
 
 
 11
 ... [N]umerous articles and studies [have shown] the development of pleural mesothelioma among individuals ... living up to at least a half mile away from a given point source of asbestos dust and who have no direct contact with asbestos products.
 
 
 12
 (R 7-168, Wagoner Affidavit (emphasis added)).
 
 
 13
 Nevertheless, the district court granted summary final judgment.[7] The trial court determined that the Hoffmans' new affidavits still failed to show Armstrong's products in use in Milton Hoffman's "work area." The judge concluded that Milton Hoffman's "work area" was limited to only a "close proximity" surrounding Mr. Hoffman, and did not include the dry docks only 300 to 400 feet away.[8] As a result, the court rejected the Hoffmans' argument that Milton Hoffman was exposed to asbestos from workers passing through the ordnance repair shop or by asbestos dust blowing into the shop from the dry dock. Because Mr. Hoffman did not work in "close proximity" to Armstrong's asbestos products, the court believed the Hoffmans' evidence only raised a mere possibility that Milton Hoffman was exposed to Armstrong's asbestos products. See Blackston v. Shook and Fletcher Insulation Co., 764 F.2d 1480, 1481 (11th Cir.1985).
 
 ANALYSIS
 
 14
 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once a party properly makes a summary judgment motion by demonstrating to the district court the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)); Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996 (11th Cir.1990).
 
 
 15
 An appellate court's review of a district court's grant of summary judgment is plenary, and we apply the same legal standards as those used in the district court. Bannum, 901 F.2d at 996; Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir.1989); Livernois v. Medical Disposables, Inc., 837 F.2d 1018, 1021-22 (11th Cir.1988). The standard for summary judgment mirrors the standard for a directed verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[I]f the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is inappropriate. Id. at 248, 106 S.Ct. at 2510. "[T]he substantive law will identify which facts are material"; the district court "must view the evidence presented through the prism of the substantive evidentiary burden." Id. at 248, 254, 106 S.Ct. at 2513. The court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor. Id. at 255, 106 S.Ct. at 2513-14; Bannum, 901 F.2d at 996; Livernois, 837 F.2d at 1022. If, so viewed, reasonable jurors could find a verdict for the nonmoving party under the substantive evidentiary standard, the nonmoving party can defeat summary judgment. Anderson, 477 U.S. at 252, 106 S.Ct. at 2512; Cable/Home Communication v. Network Productions, 902 F.2d 829, 841 (11th Cir.1990); Carlin Communication, Inc. v. Southern Bell Tel. & Tel., 802 F.2d 1352, 1356 (11th Cir.1986).
 
 
 16
 The key issue in this case is not whether there should be a presumption of causation if a plaintiff merely shows that asbestos products manufactured by the defendant were in use at a particular job site. Instead, the issue is whether a reasonable jury could conclude in this case by a preponderance of the evidence presented, that Mr. Hoffman was exposed to Armstrong's asbestos products, and that the exposure was a proximate cause of his injury.
 
 
 17
 Neither party disputes that Armstrong's products were in use 300 to 400 feet away from Milton Hoffman. The Hoffmans have offered affidavits to prove, and Armstrong has not contested, that the only known cause of mesothelioma is asbestos exposure. The Hoffmans have also offered an affidavit from an expert who has made an opinion as to the ultimate issue in the case: that Armstrong's products were the substantial causal factors of Milton Hoffman's disease. Although we make no opinion as to the weight which should be given to such evidence by the fact finder, we cannot agree with the district court's determination that no genuine issue of material fact exists for trial. Instead, we believe a reasonable jury could conclude that Milton Hoffman was exposed to and injured by Armstrong's products. The Hoffmans have raised sufficient evidence to show that a genuine issue of material fact exists.
 
 
 18
 Accordingly, we REVERSE the district court's granting of summary judgment to Armstrong and REMAND this case for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Milton Hoffman is recently deceased; his son, as personal representative of his estate has been substituted in his place
 
 
 [2]
 Artillery guns used on naval vessels were repaired in the ordnance repair shop; Mr. Hoffman's duties consisted mainly of machining parts for ships' guns
 
 
 [3]
 Malignant mesothelioma is a cancer of the lining of the lungs
 
 
 [4]
 Apparently, the biopsy upon which Dr. Saldana based his diagnosis did not contain any asbestos bodies
 
 
 [5]
 "[E]ven if an autopsy were done and no asbestos bodies were found, such a result would not provide an adequate predicate for any responsible medical opinion that the mesothelioma I diagnosed was unrelated to Mr. Hoffman's asbestos exposure." (R 3-67, Saldana Affidavit)
 
 
 [6]
 The Magistrate's Report and Recommendation was issued prior to the submission of affidavits by Leo Rapacilo and Milton Hoffman which claimed that asbestos dust entered the ordnance repair shop either carried by the wind through the windows or on the clothing and bodies of dry dock workers walking through the shop
 
 
 [7]
 The district court's order granting summary judgment did not reach the conspiracy claim. Therefore, the Hoffmans may litigate the conspiracy claim as well as the personal injury claim
 
 
 [8]
 The trial court applied this court's decision in Blackston v. Shook and Fletcher Insulation Co., 764 F.2d 1480 (11th Cir.1985), a case applying Georgia law. Blackston rejected creating a judicial presumption of exposure throughout a work site when a plaintiff is unable to establish exposure to an identifiable defendant's asbestos product, and instead held that a plaintiff must show asbestos products were used in "close proximity" to him. Id. at 1481