**LAFARGE CORPORATION, Plaintiff,**

v.

**The TRAVELERS INDEMNITY
COMPANY, et al.,
Defendants.**

No. 93–475–CIV–25C.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 22, 1996.

Charles Paul Schropp, Schropp, Buell & Elligett, P.A., Tampa, FL, for Lafarge Corporation, plaintiff.

Herbert John Baumann, Jr., Louis Schulman, Butler, Burnette & Pappas, Tampa, FL, for Travelers Indemnity Co., defendant.

Mercer Kaye Clarke, Clarke, Silverglate, Williams & Montgomery, Miami, FL, for Appalachian Insurance Company, defendant.

Louis G. Adolfsen, Melito & Adolfsen, P.C., New York City, Bradley S. Fischer, Melito & Adolfsen, Ft. Lauderdale, FL, for First State Ins. Co., defendant.

Stephen D. Cuyler, Cuyler, Burk & Matthews, Parsippany, NY, Judith Williford Simmons, W. Gray Dunlap, Jr., Frank, Schabacker, Gramling, Simmons & Dunlap, Tampa, FL, Sean R. Kelly, Joan M. Schwab, Paul S. Degiulio, Saiber, Schlesinger, Satz & Goldstein, Newark, NJ, for Gibraltar Casualty Company, defendant.

Gerard E. Pyszka, Pyszka, Kessler, Massey, Weldon, Catri, Holton & Douberley, Miami, FL, for Highlands Insurance Company, defendant.

Caryl E. Delano, Harris, Barrett, Mann & Dew, St. Petersburg, FL, Anthony R. Gambardella, Michael E. Buckley, Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, NY, for Northbrook Insurance Company, defendant.

Scott Herbert Michaud, Michaud, Buschmann, Fox, Ferrara & Mittelmark, P.A., Boca Raton, FL, for Puritan Insurance Company, defendant.

### FINAL SUMMARY JUDGMENT

ADAMS, District Judge.

Upon consideration of the pending motions, responses to such motions, and the record herein, the Court finds that:

### I

Plaintiff brought this action against Travelers Indemnity Company ("Travelers"), and other insurers, alleging that Defendants had a duty to defend and indemnify Plaintiff for certain costs of clean-up of hazardous waste at a location in Tampa, Florida. Plaintiff declares that Defendants should have defended and indemnified Plaintiff regarding a suit against Plaintiff by the Environmental Protection Agency. Travelers maintains that

it has no such responsibility based upon pollution exclusions contained in its insurance policies with Plaintiff.

The EPA prevailed in an environmental clean-up action against Plaintiff for the 62nd Street Superfund Site ("Site") which was a dump site that contained waste cement, cement kiln dust and kiln liners attributable to Plaintiff. During 1973, Plaintiff's predecessor, General Portland Cement Hooker's Point Plant, arranged for the transport and disposal of certain cement waste by Jernigan Trucking. Jernigan Trucking diverted this waste from the planned location and dumped it at the instant Site. Plaintiff was found to have been responsible for the release of certain hazardous materials which arose from the waste it dumped at the Site.

It is clear that the dumping itself occurred in 1973. However, it was not until 1976 that there was found to be a suspicion of leaching of waste water from the Site. In fact, it was not until 1983 that official reports prepared by the EPA revealed the presence of pollution contamination at the Site.

## II

### A. *Summary Judgment Standards*

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56. Once a party properly makes a summary judgment motion by demonstrating to the district court the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)); *Hoffman v. Allied Corp.,* 912 F.2d 1379, 1382 (11th Cir.1990).

The standard for summary judgment mirrors the standard for a directed verdict. *Hoffman,* 912 F.2d at 1383. Thus, a dispute about a material fact is genuine, and summary judgment is inappropriate, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The Court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor. *Hoffman,* 912 F.2d at 1383. If the Court finds, under the relevant standards, that reasonable jurors could find a verdict for the nonmoving party since a disputed factual issue exists, summary judgment should be denied. *Id.* The Court may not decide a factual dispute. *Fernandez v. Bankers National Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir.1990). If a factual issue is present, the Court must deny summary judgment and proceed to trial. *Id.*

The Court must examine the evidence in light of the relevant substantive law when identifying which facts are material. *Id.* Of course, as an insurance dispute, persuasive federal substantive law on those issues will govern this Court's determination of this action.

### B. *Choice of Law*

■ In a diversity action the district court must apply the law of the forum when deciding conflicts of law issues. *Klaxon Company v. Stentor Electric Manufacturing Company,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Digioia v. H. Koch & Sons,* 944 F.2d 809, 811 (11th Cir.1991). Plaintiff maintains that, as with other issues of substantive law, the "significant relationship" test is applied in Florida when deciding choice of law questions concerning the interpretation of the instant contracts. *Shapiro v. Associated International Insurance Co.,* 899 F.2d 1116 (11th Cir.1990). Plaintiff declares that under Florida choice of law rules, matters bearing on the validity and substantive obligation of contracts are determined by the law of the place where the contract is made ("*lex loci contractus*"). *Tang How v. Edward J. Gerrits, Inc.,* 961 F.2d 174, 179 (11th Cir.1992). Thus, Texas law should apply.

■ Generally, under Florida law, the doctrine of "*lex loci contractus*" directs that, in the absence of a contractual provision

specifying the governing law, contracts, other than one for performance of services, are governed by the law of the state in which the contract is made, i.e., where the last act necessary to complete the contract is done. *Fioretti v. Massachusetts General Life Insurance Company,* 53 F.3d 1228, 1235–1236 (11th Cir.1995) (Applying rule of *"lex locus contractus"* to a life insurance policy). Florida applies this more rigid rule, as opposed to the more flexible "significant relationship test", because, in light of our migratory society, Florida's public policy favors a rigid conflicts of law rule in situations where a party could modify the contract by merely moving to another state. *Id.* This rationale clearly applies to cases involving automobile or life insurance policies as in *Fioretti* and *Sturiano v. Brooks,* 523 So.2d 1126, 1130 (Fla.1988).

■ However, the Florida Supreme Court would not apply *"lex locus contractus"* to this case. The migration rationale does not apply to the instant case for reasons similar to those expressed by the Eleventh Circuit in a case involving a contract insuring real property. *See Shapiro v. Associated International Insurance Co.,* 899 F.2d 1116 (11th Cir.1990).

The validity and rights under the instant contracts are determined by the law of the state which the parties understood to be the principal location of the insured risk, unless some other state has a more significant relationship with the transaction and parties. Section 193, Restatement (Second) of Conflicts of Law. Based upon the relevant criteria of Section 6 of the Restatement (Second) of Conflicts of Law, Florida has the most significant relationship with this transaction and the parties. The principal risk insured is located in Florida and was contemplated to remain unchanged. Indeed, Florida's interest in adjudicating interests related to pollution damage occurring in the state is substantial. Accordingly, Florida substantive law should govern, supplemented with persuasive authority from other jurisdictions where necessary, the resolution of this matter.

## C. *Analysis*

### 1. *Preliminary*

■ The construction and effect of a written contract of insurance, including the determination and resolution of an ambiguity, is a matter of law to be determined by the Court, which can often be decided by summary judgment. *Dahl–Eimers v. Mutual of Omaha Life Ins. Co.,* 986 F.2d 1379, 1381 (11th Cir.1993); *See U.S. v. Pepper's Steel and Alloys, Inc.,* 823 F.Supp. 1574, 1579 (S.D.Fla.1993). Further, where there exists an ambiguity, insurance contracts are construed in favor of the insured, while exclusions are always construed liberally in favor of coverage so as not to defeat the purpose of insurance. *Id.; Stuyvesant Ins. Co. v. Butler,* 314 So.2d 567, 570 (Fla.1975); *Tropical Park, Inc. v. U.S. Fidelity and Guar. Co.,* 357 So.2d 253, 256 (Fla. 3rd DCA 1978).

Travelers issued several general liability policies to General Portland/Lafarge, during the relevant time periods herein, agreeing to defend and indemnify Plaintiff under certain circumstances. Since the damage to Plaintiff herein is continuous in nature with no clear date of origin or cessation, all policies are implicated. These general liability policies contained three different pollution exclusions.

From January 1, 1972 through January 1, 1974 and from April 1, 1981 through April 1, 1984, the policies contained the following exclusion:

It is agreed the insurance does not apply to:

(a) .... damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant

(1) if such emission, discharge, seepage, release or escape is either **expected or intended** from the standpoint of any insured or any person or organization for whose acts or omission any insured is liable....

For the years from January 1, 1974 to April 1, 1981, the policies contained the following exclusion:

This insurance does not apply to:

.... damage arising out of the discharge, dispersal, release or escape of smoke, vapors, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants....; but this exclusion does not apply if such discharge, dispersal, release or escape is **sudden and accidental.**

From April 1, 1984 through April 1, 1985, the policy contained the following exclusion:

This insurance does not apply to:

.... damage arising out any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant if such emission, discharge, seepage, release or escape is **non-sudden or gradual** from the standpoint of any insured or any person or organization for whose acts or omissions any insured is liable.

Defendant maintains that under any of these policies, coverage is excluded under the respective pollution exclusions. Plaintiff argues it is entitled to coverage.

### 2. *Implication of Third Party Actually Disposing of Waste*

■ Plaintiff declares that coverage is allowed since a third party, Jernigan Trucking, actually disposed of this waste contrary to Plaintiff's directions. The fact that General Portland contracted to dispose of the cement waste in the Seffner landfill and it was diverted to the instant Site by Jernigan Trucking is of no consequence. *See Independent Petrochemical Corp. v. Aetna Casualty and Surety Company,* 842 F.Supp. 575, 583–585 (D.D.C.1994). Indeed, an insured who arranges for disposal of waste is responsible for subsequent contamination and is barred under both the pollution exclusion clause, even though it did not know where or how a third party disposed of its waste and it assumed the waste was disposed of lawfully and properly with no risk of contamination. *See St. Paul Fire and Marine Ins. Co. v. Warwick Dyeing Corp.,* 26 F.3d 1195, 1201–1203 (1st Cir.1994).

■ Moreover, Jernigan Trucking was determined to be General Portland's agent in the related state court matter of *Dennis Diaz and Peninsular Fisheries v. Adrian H. Collins, General Portland, Inc. et al.,* Thir-

teenth Judicial Circuit of the State of Florida, Case No. 78–808–G. The Court has taken judicial notice of the judgment in that action. Indeed, there is ample additional evidence in the record to show that General Portland was aware of where its cement waste was being dumped by Jernigan Trucking.

### 3. *The Sudden and Accidental Exclusion*

■ Travelers argues that the sudden and accidental exclusion is unambiguous and precludes the instant coverage because Plaintiff's dumping of hazardous waste was continuous and not sudden. *Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp.,* 636 So.2d 700 (Fla.1993); *Southeastern Fidelity Ins. Corp. v. Dimmitt Chevrolet, Inc.,* 24 F.3d 151 (11th Cir.1994). Plaintiff claims that it is the subsequent seepage of dangerous chemicals, rather than the initial dumping of waste, which must be sudden and accidental in order to avoid this exclusion. The Court agrees with Defendant. This provision is unambiguous. In other words, the relevant contract provision is not susceptible to two or more reasonable interpretations.

■ This policy plainly does not cover pollution arising from discharge of certain waste, unless the discharge of waste is sudden and accidental. Coverage is only afforded if the discharge is sudden and accidental. It is clear that the initial dumping of the instant waste material was not sudden or accidental. That alone bars coverage. Moreover, the actual contamination herein was not sudden and accidental either, which would preclude coverage under this provision even if construed in Plaintiff's favor.

Again, the term "sudden and accidental", as used in the instant policies, is not ambiguous. In short, it means abrupt and accidental. *Id.* Indeed, the term is given this same meaning under Texas law, the law sought to be applied by Plaintiff. *See In re Texas Transmission Corporation PCB Contamination Insurance Coverage Litigation,* 870 F.Supp. 1293 (E.D.Pa.1992), *affirmed,* 995 F.2d 219 (3rd Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 291, 130 L.Ed.2d 206 (1994); *American States Ins. Company v.*

*Hanson Industries,* 873 F.Supp. 17, 24–26 (S.D.Texas 1995).

The pollution here did not occur until certain chemicals from the waste seeped into the groundwater at the Site. Like the contamination at issue in *Dimmitt,* the initial discharge and the resulting pollution here occurred over a continuous period and cannot be considered sudden. Thus, any damages arising from contamination or defense from liability is not covered, even if the contamination was unexpected, by the policies in effect from January 1, 1974 through April 1, 1981.

Even if the Court were compelled to interpret these policies, coverage would be excluded. There do exist several meanings of the word "sudden", including abrupt, hasty, immediate, instant and unexpected. However, in this context here, the plain and ordinary meaning of the term does not include a gradual and unintended result. Such a definition is more like an antonym, rather than a reasonable interpretation of the term "sudden and accidental" as used in these policies.

In the alternative, construing the term "sudden and accidental" to mean unintended or unexpected, as Plaintiff argues, would also bar coverage here. Indeed, it is now well settled by a majority of jurisdictions, that it is irrelevant whether the damages were expected since the pollution exclusion clause refers to the discharge and not to the environmental damages themselves. *See St. Paul Fire and Marine Ins. Co.,* 26 F.3d at 1203. The relevant discharge is the disposal of waste into the landfill, not some other unspecified occurrence of contamination. *Id.* at 1203. It is immaterial whether Plaintiff knew that its materials contained hazardous substance or that they might contaminate. If the discharge of waste was expected or intended and damages arose from such discharge, coverage is barred.

### 4. *The Expected or Intended Exclusion*

Any pollution which occurred from January 1, 1972 through January 1, 1974, and from April 1, 1981 through April 1, 1984, is not covered if the pollution arose from discharge of waste which was intended or expected. The policy excludes coverage for damages arising out of any discharge of any waste where such discharge of waste is either **expected or intended.**

There is no Florida appellate or Supreme Court opinion interpreting this exact type of contract provision. However, the Court is persuaded by the analysis in *Damar, Inc. v. United States Fire Insurance Company,* 856 F.Supp. 679 (N.D.Ga.1993). Applying contract construction principles of Georgia, which are substantially similar to the laws of Florida, to the exact same pollution exclusion clause at issue here, the district court in *Damar* found the provision unambiguous. Thus, the court determined that since the focus is on whether the discharge of the waste was expected or intended, rather than whether the damage was expected or intended, coverage was precluded.

Here, the clause fails to contemplate whether the contamination or damage is expected or intended in determining whether coverage applies. Thus, since the discharge of waste here was clearly intended or expected, and the damage arose out of this discharge, the exclusion applies to bar coverage. *See also Anaconda Minerals Company v. Stoller Chemical Company, Inc.,* 773 F.Supp. 1498, 1506 (C.D.Utah 1991), *affirmed,* 990 F.2d 1175 (10th Cir.1993); *Travelers Insurance Company v. Waltham Industrial Laboratories,* 722 F.Supp. 814, 824–825 (D.Mass. 1988), *affirmed in part, reversed in part,* 883 F.2d 1092 (1st Cir.1989).

### 5. *Non–Sudden or Gradual*

The last policy excludes coverage for damages arising out of discharge of waste where the discharge is **non-sudden or gradual.** Like the "expected or intended" exclusion, the focus here is whether the discharge is gradual. Here it is clear that the discharge, as well as the subsequent contamination, was gradual. Thus, any damages arising out of such discharge are not covered under the relevant policy.

### 6. *Duty to Defend and Indemnify*

Since the filing of the original EPA action against Plaintiff, it was reasonable for Travelers to believe the matter fell within the various pollution exclusions. Thus, no duty to defend or indemnify was ever triggered. *See Tennessee Corp. v. Lamb Brothers Con-*

*struction Co.,* 265 So.2d 533, 537–538 (Fla. 2d DCA 1972). The allegations of fact in the EPA action sufficiently fell within the pollution exclusion.

### D. *Conclusion*

As discussed above, the occurrence under these pollution exclusions which must be "sudden and accidental", unexpected, unintended, or sudden, to allow coverage, is the discharge of waste from which damage arose. The fact that Plaintiff arranged with a third party to dispose of its waste does not alter the Court's finding that Plaintiff intended and expected the discharge to occur under these circumstances and that this discharge was not sudden and accidental. Defendants did not breach any duty to defend or indemnify Plaintiff for the damages at the Site.

Accordingly, it is **ORDERED** that:

1. Defendant Travelers' Motion to Strike Exhibits W and X of Plaintiff's Appendix of Exhibits to the Motion for Partial Summary Judgment (Dkt. # 90) is **DENIED.**

2. Defendant Travelers' Motion to Take Judicial Notice of Documents (Dkt. # 91) is **GRANTED.**

3. In view of the Court's ruling on Defendant Travelers' Motion for Summary Judgment, the following motions are moot: Plaintiff's Motion to Strike Experts (Dkt. # 101), Plaintiff's Motion to Expedite Ruling (Dkt. # 103), Defendant Travelers' Motion in Limine (Dkt. # 137 & 138). Accordingly these motions are **DENIED.**

4. Plaintiff's Motion for Partial Summary Judgment (Dkt. # 69) is **DENIED.**

5. Defendants Travelers' Motion for Summary Judgment (Dkt. # 74) and Northbrook's Motions for Summary Judgment (Dkts. # 86 & 98) are **GRANTED** and the Clerk is directed to enter judgment in favor of the Defendants Travelers and Northbrook and against Plaintiff Lafarge.

6. The Court reserves jurisdiction for imposition of fees and costs upon motion of either party.

**DONE AND ORDERED.**