THE SANDALWOOD CONDOMINIUM
ASSOCIATION AT WILDWOOD,
INC., Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,
and Frank Slaughter Insurance
Agency, Inc., Defendants.

No. 802CV59T30MAP.

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 3, 2003.

Richard Oliver, Buchanan Ingersoll, P.C., Tampa, FL, Peter Michael Cardillo, Cardillo Law Firm, Tampa, FL, for Sandalwood Condominium Association at Wildwood, Inc., plaintiff.

Steven C. Teebagy, Brian C. Powers, Jacqueline A. Grady, Powers, McNalis & Torres, West Palm Beach, FL, for Allstate Insurance Company, Frank Slaughter Insurance Agency, Inc., defendants.

## ORDER

MOODY, District Judge.

THIS CAUSE comes before the Court upon Plaintiff's Motion for Partial Summary Judgment and Incorporated Memorandum of Law (Dkt.# 81), Plaintiff's Supplement to Motion for Partial Summary Judgment (Dkt.# 102) and Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment and Incorporated Memorandum of Law (Dkt.# 107). The Court, having considered the motion, supplement and memoranda, and being otherwise fully advised, denies the Plaintiff's motion for the following reasons.

## I. FACTUAL BACKGROUND

The Sandalwood Condominium Association at Wildwood, Inc. ("Sandalwood") owns a condominium complex located in Wildwood, Florida (the "Complex"). The Complex consists of thirteen two-story residential buildings and one clubhouse building. Beginning in 1984 or 1986, Sandalwood purchased several insurance policies from the Allstate Insurance Company ("Allstate") through the Frank Slaughter Insurance Agency, Inc. One of these policies provided commercial property coverage for the Complex. Allstate continued to provide Sandalwood with commercial property insurance coverage for the Complex until August of 2000.

Sandalwood alleges that it discovered termite damage to several of the buildings in the Complex in November of 1998. As repairs to the termite damage progressed, it became apparent to Sandalwood that the termite damage to the Complex was extensive. Sandalwood notified Allstate of the damage and potential claim in April of 2000. On or about September, 29, 2000, Sandalwood submitted a claim to Allstate for the termite damage under the collapse coverage section of its commercial property insurance policy. The relevant portion of Allstate's policy covering collapse damage states:

We will pay for risk of direct physical loss involving collapse of a covered building or any part of a covered building caused only by one or more of the following:

    b.  hidden decay;

    c.  hidden insect or vermin damage;

Collapse does not include settling, cracking, shrinkage, building or expansion.

Upon receipt of the claim from Sandalwood, Allstate retained Haag Engineering Co. to inspect and evaluate the damage to the Complex. After receiving Haag Engineering's report and consulting with legal counsel, Allstate denied Sandalwood's collapse coverage claim on September 21, 2001. Allstate asserted that the damage to the Complex was not covered because the damage did not rise to the level of collapse and was not hidden.

## II. *PROCEDURAL HISTORY*

Sandalwood originally filed suit in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, alleging a breach of contract and seeking declaratory relief. Allstate removed the case to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1441. This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

Sandalwood filed a motion for summary judgment asserting that the property damage was a result of hidden termite damage and decay that resulted in a collapse of the various residential buildings in the Complex. Sandalwood also asserts that it is entitled to summary judgment regarding several of Allstate's affirmative defenses.

## III. *SUMMARY JUDGMENT STANDARD*

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. *Id.* at 255, 106 S.Ct. 2505.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir.1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v.*

*M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir.1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir.1989).

## IV. *DISCUSSION*

### A. "Collapse"

■ Allstate asserts that Sandalwood is not entitled to coverage because the damage to the Complex did not rise to the level of "collapse." In *Auto Owners Ins. Co. v. Allen*, 362 So.2d 176 (Fla. 2d DCA 1978), the Second District Court of Appeal of Florida interpreted the term "collapse" within the meaning of a similar insurance policy. The court defined the term "collapse" as a "material and substantial impairment of [a building's] basic structure." *Id.* at 178.

Allstate argues that the *Allen* definition includes the requirement that the "collapse" be imminent. Although an imminent requirement is absent from the definition outlined in *Allen*, Allstate premises its argument upon the fact that the evidence in *Allen* indicated that the structure was in imminent danger of collapse. Allstate also cites *Doheny West Homeowner's Assoc. v. American Guarantee and Liability Ins. Co.*, 70 Cal.Rptr.2d 260, 60 Cal. App.4th 400 (1997), in support of its position. The *Doheny* court noted that without the imminence requirement, any damage could result in "collapse" damage if the initial damage was neglected for a long enough period, thereby converting the insurance policy into a maintenance contract.

The Court disagrees with Allstate's position. Although the structure in *Allen* was in imminent danger of falling, the *Allen* court specifically rejected the notion that the damage to the insured building must render it inhabitable in order to qualify as "collapse" damage. *Allen*, 362 So.2d at 177 n. 1. The structure need not be in imminent danger of collapse, but the damage to it must substantially impair the structural integrity of the building. That is, the damage must alter the basic stability or structure of the building in order to constitute a "collapse."

### B. "Hidden"

■ Allstate also alleges that it properly denied coverage for the damage to the Complex because the damage was not "hidden" from Sandalwood. The policy clearly states that the collapse damage must be caused only by "hidden decay" or "hidden insect or vermin damage." Allstate asserts that the Complex had knowledge of "a long history of termite and water damage which it was well aware of for many years prior to the alleged collapse." Allstate alleges that Sandalwood cannot claim the damage was hidden if they had prior knowledge of its existence.

No Florida court has directly addressed the definition of "hidden" in a commercial property insurance policy. Allstate argues that the Court should reject Sandalwood's argument that "hidden" simply means obscured from view, and apply a standard of actual or constructive knowledge. Allstate asserts that such an actual or constructive knowledge standard would require Sandalwood to establish that it "did not know or did not have a reason to know that the

'collapsed' buildings or part of the buildings had termite damage and decay damage." Allstate notes that adopting a literal meaning of the word "hidden" would allow insureds to ignore maintenance problems in order to ensure that the damage remains "hidden."

The Court determines that in order to recover under the policy, Sandalwood must demonstrate that the damage to the structural integrity of the Complex was not visible and that Sandalwood neither knew nor should have known of the structural damage with sufficient time to allow for repairs before it reached the stage of "collapse." *See Passman v. State Farm Fire & Cas. Co.*, 779 So.2d 323, 326 (Fla.App.2d DCA 1999); *Island Breakers v. Highlands Underwriters Ins. Co.*, 665 So.2d 1084, 1086 (Fla. 3d DCA 1995) (Cope, J., concurring). An insured must also take reasonable steps to correct damage before it undermines the structural integrity of the building. Of course, under appropriate circumstances, a property owner may know of termite damage, but while acting reasonably, not know that the damage is threatening the structural integrity of the building. In most cases, the reasonableness of the owner's actions, or lack of action, is a question for the jury.

## C. Conclusion

The Court finds that numerous material factual issues are in dispute and must be resolved by the jury. Specifically, the jury must determine the nature, extent, and cause of the damage found in the various buildings of the Complex; when the damage occurred; what caused the damage; whether the damage in each building rises to the level of a "collapse"; when the "collapse," if any, occurred; whether the "collapse" damage, if any, was caused by "hidden decay" or "hidden insect damage"; when Sandalwood first became aware of the damage to the buildings; and whether Sandalwood took reasonable steps to correct the problem once it learned of the damage. It is possible that the jury may resolve these issues differently with respect to each of the various buildings in the Complex.

The Court also finds that numerous issues of material fact preclude summary judgment on Allstate's affirmative defenses and that the issues are more appropriately dealt with in a Motion for a Directed Verdict.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiff's Motion for Partial Summary Judgment and Incorporated Memorandum of Law (Dkt.# 81) is DENIED.