[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13600
Non-Argument Calendar

_____

D.C. Docket No. 2:17-cv-00468-ACA

KHALIL WILLIAMS,

Plaintiff - Appellant,

versus

HOUSING OPPORTUNITIES FOR PERSONS WITH EXCEPTIONALITIES,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 15, 2019)

Before WILLIAM PRYOR, JILL PRYOR and GRANT, Circuit Judges.

PER CURIAM:

Khalil Williams appeals the district court's grant of summary judgment to his former employer, Housing for Persons with Exceptionalities ("HOPE"), on his claim that HOPE discriminated against him based on his race when it terminated him. The district court ruled that Williams failed to introduce sufficient evidence to support a reasonable inference that HOPE's decision to terminate him was based on his race. Williams argues on appeal that the district court erred by failing to decide that race was at least a motivating factor in HOPE's termination decision. We disagree. After careful review, we affirm the district court.

## I.    BACKGROUND

Williams, who is African-American, worked for HOPE as a direct care provider.[1] In that position, he was responsible for supervising three group home residents with special needs and administering their medication. Williams worked each weekend during the night shift, although HOPE also expected him to work additional shifts, depending on his availability. While he worked weekend nights at HOPE, Williams spent his weekdays studying air conditioning and refrigeration at a local community college.

The sequence of events leading to Williams's termination began when HOPE's executive director, Debra Sokol, called Williams to ask whether he could

---

[1] Because we are reviewing the district court's grant of a motion for summary judgment, we recite the facts in the light most favorable to Williams, the nonmovant. *See Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990).

2

cover another employee's scheduled shift after that employee had called out. Williams responded that he could not cover the shift because that evening he planned to celebrate his graduation from the community college program. Sokol replied to Williams, "either you come in or don't come back." Doc. 18-1 at 10.[2]

Sokol called Williams the next morning to remind him that he had signed an agreement in which he promised as a condition of his employment to cover extra shifts when he was available. The two agreed to meet in HOPE's office later that day to review the agreement. As the two conferred and Sokol read the agreement aloud to Williams, he interrupted her to say that she should not expect him to cover the extra shift at issue based on that provision because he had a legitimate excuse as to why he was unavailable.

Sokol responded to Williams with a profanity-laced tirade lasting two or three minutes. She first told him: "I can't stand your black ass." *Id.* at 11. Williams then asked Sokol for a copy of the agreement but she refused his request. She instructed him to instead memorize the document based on her recitation. After uttering various profanities, Sokol returned the document to a file cabinet and directed Williams to leave the premises by saying: "[G]et out of here. Get out of this office." *Id.* at 14. Sokol ran into her office to hide from him under her desk.

---

[2] Citations in the form "Doc #" refer to the numbered entries on the district court's docket.

He then told her, "you have made your decision," before he left the office as instructed with the belief that Sokol's instruction amounted to her termination of his employment.  He accordingly elected not to report for his remaining scheduled shifts.

Williams sued HOPE in federal district court alleging a single claim of racial discrimination under Title VII and 42 U.S.C. § 1981 arising from his alleged termination.  The complaint alleged that Williams "may prevail under a mixed-motive theory, as even if [HOPE] had legitimate reasons for terminating him, race was at least a motivating factor in the adverse employment actions [it] took against him, up to and including termination."  Doc. 1 at ¶ 18.  HOPE answered the complaint.

After discovery, HOPE filed a motion for summary judgment.  HOPE argued that Williams voluntarily resigned.  It further argued that, assuming it did fire Williams, the record lacked evidence from which a reasonable juror could find that its decision to fire him evinced discriminatory intent.  HOPE pointed to evidence in the record militating against a finding of discriminatory intent, including Williams's testimony that Sokol's racial remark was "very much out of character," Doc. 18-1 at 13, and interrogatory answers showing that immediately after Williams's separation, Sokol filled his position with people of the same race as his.

4

In response, Williams argued that he was terminated when he left the office following his confrontation with Sokol. According to Williams, a reasonable jury could find that race was at least a motivating factor in HOPE's decision to fire him because Sokol told him, "I can't stand your black ass," right before his termination. He further argued that his strong work performance, HOPE's lack of a reason for firing him, the falsity of Sokol's explanation that he stopped showing up for work, and her testimony that he was not required to work on the night of his graduation all supported an inference of racial discrimination.

The district court granted HOPE's motion. The court ruled that under *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011), Williams failed to present a convincing mosaic of circumstantial evidence that would allow a reasonable jury to infer that HOPE fired him because of his race.

This is Williams's appeal.

## II.     STANDARD OF REVIEW

We review *de novo* a district court order granting a motion for summary judgment, viewing the facts and all reasonable inferences drawn therefrom in favor of the non-moving party. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291-92 (11th Cir. 2012). Summary judgment is appropriate when a movant shows that there is "no genuine dispute as to any material fact," such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute

5

of a material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## III.    DISCUSSION

Williams argues on appeal that the district court erred in ruling that he failed to introduce sufficient evidence from which a reasonable jury could find that HOPE's decision to terminate him was based on his race. Title VII prohibits employers from terminating an employee "because of . . . race." 42 U.S.C. § 2000e-2(a)(1). An employer runs afoul of this prohibition whenever race was at least "a motivating factor" for the termination decision, "even though other factors also motivated" it. *Id.* § 2000e-2(m). Section 1981 similarly "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). As a general rule, discrimination claims brought pursuant to Title VII and § 1981 "are subject to the same standards of proof and employ the same

6

analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).[3]

We typically evaluate employment discrimination claims by applying the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). We do not apply that framework here, however, because Williams concedes in his brief that he "does not rely on establishing a traditional *McDonnell Douglas* prima facie case." Appellant's Br. at 36. But, as we have recognized, "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion." *Lockheed-Martin*, 644 F.3d at 1328. Rather, a "plaintiff will always survive summary judgment" by "present[ing] circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."[4] *Id.* (internal quotation marks omitted).

---

[3] The fit between the standards that apply to claims and defenses arising under the two statutes is nevertheless inexact. We have held that "the 1991 mixed-motive amendments to Title VII do not apply to § 1981 claims." *Mabra v. United Food & Commercial Workers Local Union No. 1996*, 176 F.3d 1357, 1358 (11th Cir. 1999). We do not address this issue, however, because it does not affect our disposition of this appeal.

[4] In his opening brief, Williams consistently conflates the standards that we apply under *McDonnell Douglas*, *Lockheed-Martin*, and a third case, *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016). *McDonnell Douglas* and *Lockheed-Martin* set forth alternative

Williams argues that a reasonable jury could find that HOPE fired him because of his race because Sokol told him, "I can't stand your black ass," just before she fired him.  Appellant's Br. at 23.  Williams also argues that a reasonable jury could find intentional discrimination from the falsity of HOPE's explanation of his separation.  We address each of these arguments in turn.

**A.    Williams Has Failed to Present Sufficient Evidence to Show That He Was Fired Because of His Race.**

Williams argues that he has shown intentional discrimination based on his testimony that Sokol told him, "I can't stand your black ass."  Doc. 18-1 at 11.  We disagree.  Her comment evinces discriminatory animus and is unbefitting of any workplace.  But a reasonable jury could not find that she fired him because of his race based only on that statement because its content bears no relation to the termination decision.  *Cf. Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223,

---

frameworks for analyzing "single-motive claims[,] . . .  also known as 'pretext' claims[, which] require a showing that bias was the true reason for the adverse action."  *Quigg*, 814 F.3d at 1235.  In contrast, we apply the framework described in *Quigg* to "mixed-motive" employment discrimination claims, which require a showing that "illegal bias, such as bias based on [race] or gender, 'was a motivating factor for' an adverse employment action, 'even though other factors also motivated' the action."  *Id.* (quoting 42 U.S.C. § 2000e-2(m)).  The district court analyzed Williams's claim under *Lockheed-Martin*, and Williams raised no argument in his opening brief that the district court's application of *Lockheed-Martin* was error.  He has therefore abandoned the argument that the mixed-motive "motivating factor" standard should apply instead.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014).  We accordingly treat his claim as a "single-motive" claim.

In his reply brief, Williams argues that we should avoid comparing his evidence to a mosaic.  We do not consider arguments raised for the first time in a reply brief.  *Id.* at 682.  We note nonetheless that the term "'convincing mosaic' is not a legal test."  *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764-65 (7th Cir. 2016).  Rather, the phrase "was designed as a metaphor to illustrate why courts should not try to differentiate between direct and indirect evidence."  *Id.*

8

1229 (11th Cir. 2002) ("Although a comment unrelated to a termination decision may *contribute* to a circumstantial case for pretext, it will usually not be sufficient absent some additional evidence supporting a finding of pretext." (citation omitted)).  Further, other evidence in the record counsels against a finding that Sokol fired Williams because of his race.  He testified that her comment was "very much out of character," Doc. 18-1 at 13, and after his separation, she filled his position with people of the same race.  The record evidence is thus insufficient for Williams to withstand HOPE's motion for summary judgment.[5]

---

[5] Williams also argues that another encounter between him and Sokol shows her discriminatory intent:  her refusal of his request to use the restroom inside her home while he was there to paint her deck pursuant to an agreement between them that was unrelated to his employment at HOPE.  In the district court, Williams recounted that incident in the facts section of his brief opposing summary judgment but raised no argument that the incident evidenced intentional discrimination.  The district court nonetheless explained that evidence of that encounter failed to show that Williams was fired because of his race:

> Sokol did not tell . . . Williams that he could not use the restroom inside her house because he is African-American, and . . . Williams has submitted no evidence demonstrating that . . . Sokol allowed Caucasian individuals doing work at her house to use the restroom inside.  Therefore, this evidence does not give rise to an inference of intentional race discrimination.  In the absence of other evidence suggesting that . . . Sokol prohibited . . . Williams from using her restroom because he is African-American, a reasonable jury cannot infer discriminatory intent from this facially neutral act that is removed in time and place from the employment decision.

Doc. 22 at 16.  We agree with the district court.  On appeal, Williams argues that Sokol's refusal of his request shows discriminatory animus because it exemplifies the historical mistreatment of African-American workers in the South.  But Williams did not raise that argument in the district court, and we therefore decline to address it here.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." (internal quotation marks omitted)).

9

We disagree with Williams's argument that *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354 (11th Cir. 1999), requires us to decide that his evidence is sufficient to support a finding of intentional discrimination. There, two former supermarket employees brought an age-discrimination suit against the supermarket, their former employer, after a district manager terminated them. *Damon*, 196 F.3d at 1357-58. Within one year of assuming the district manager position, the manager fired or demoted "five older, more experienced [workers]," including the plaintiffs, "and replaced them with [employees] who were younger and less experienced." *Id.* at 1358. One of the younger replacements testified that the district manager had told him immediately after terminating one of the two plaintiffs (and three months after terminating the other) that "what the company needed was aggressive *young* [people] like [the younger replacement] to be promoted." *Id.* at 1359, 1363 (internal quotation marks omitted). We decided based on this and other evidence in the record that the two former supermarket employees survived summary judgment. *Id.* at 1366.

Williams contends that *Damon* supports his case because there the district manager's statement was considered as probative circumstantial evidence that the manager impermissibly discriminated against the plaintiff whom the manager fired three months before making the statement. *See id.* at 1363. Williams argues that the closer temporal proximity between Sokol's statement and his termination

10

suggests that he too should survive summary judgment.  But this argument misses the mark because Williams has presented much weaker evidence of intentional discrimination than the *Damon* plaintiffs did.  Most significantly, the district manager's statement in *Damon* was more closely related to the termination decision because it implied that the protected characteristic generally affected the manager's personnel decisions.  *See id.* at 1362 ("The comment . . . arguably suggests that [the manager] had an ageist preference for young managers.  Given the *substance, context, and timing* of [the] comment, if credited, we find it to be a significant piece of circumstantial evidence." (emphasis added)).  In contrast, Sokol's statement does not imply that race had any influence on Sokol's personnel decisions, as a general matter or in Williams's case.  Accordingly, temporal proximity aside, without additional evidence, we must conclude that Sokol's remark was unconnected to her termination decision.

For similar reasons, Williams's reliance on *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201 (11th Cir. 2010), is misplaced.  There, a plaintiff sued her former employer, alleging that its chief executive fired her because of her age.  *Mora*, 597 F.3d at 1202.  When the chief executive fired the plaintiff, the executive stated, "I need someone younger I can pay less . . . I need an Elena [Quevedo, a 25 year old employee]."  *Id.* at 1203 (internal quotation marks omitted).  The executive further told the plaintiff, "[Y]ou are very old, you are very inept.  What

11

you should be doing is taking care of old people.  They really need you.  I need somebody younger that I can pay less and I can control." *Id.* (internal quotation marks omitted).  In speaking about the plaintiff to a different employee, the executive also said that the plaintiff "is too old to be working here anyway." *Id.* (internal quotation marks omitted).  We concluded that a reasonable jury could take these statements "at face value" and find that the chief executive fired the plaintiff because of her age. *Id.* at 1205.  But in the instant case, unlike in *Mora*, we cannot conclude that Sokol based her termination decision on Williams's race simply by taking Sokol's statement "at face value." *See id.*  *Mora* therefore offers Williams little help.

**B.    A Reasonable Jury Could Not Find Intentional Discrimination Based on The Falsity of HOPE's Explanation of His Separation.**

As an alternative to relying solely on Sokol's remark, Williams argues that under *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), we may find intentional discrimination from the falsity of HOPE's explanation that he was terminated when he abandoned his job and stopped showing up for work. Appellant's Br. at 32.  Even if we were to agree with Williams that HOPE's explanation of his resignation is unworthy of credence, we would still conclude that the record lacked sufficient evidence from which a reasonable jury could find that he was fired because of his race.

The *Reeves* Court, applying *McDonnell Douglas*, recognized that "a plaintiff's prima facie case [under *McDonnell Douglas*], combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148 (emphasis added). But Williams has presented much weaker evidence of intentional discrimination than would a plaintiff who had established a prima facie case under *McDonnell Douglas*. To establish a prima facie case under the *McDonnell Douglas* burden-shifting framework, a plaintiff must show: "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated similarly situated employees outside her class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc) (internal quotation marks omitted).[6] Establishing the prima facie case "raises an inference of discrimination," but it does so "only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (internal quotation marks omitted). Williams's evidence

---

[6] "If the plaintiff succeeds in making out a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the [plaintiff's] ultimate burden of persuading the [factfinder] that she has been the victim of intentional discrimination." *Id.* at 1221.

13

is weaker than that offered by a plaintiff who has established a prima facie case under *McDonnell Douglas* because, as we have explained, the record contains a paucity of evidence to prove that Sokol's decision to fire Williams was based on his race.  Though we acknowledge the possibility that a plaintiff who makes no attempt to establish a prima facie case under *McDonnell Douglas* may nonetheless survive summary judgment based in part on proof that the employer's proffered justification is false, we conclude that such a plaintiff would need stronger evidence of intentional discrimination than Williams has offered in the instant case.  *See Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1337-38 (11th Cir. 2015) (concluding that a plaintiff failed to offer sufficient evidence to prove "a causal connection between his race and his termination" when the plaintiff showed that the defendant's justification for his termination "may have been pretext of *something*" but did not show that the justification "was pretext of *discrimination on the basis of his race*").[7]

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order granting HOPE's motion for summary judgment.

**AFFIRMED.**

---

[7] We make no attempt to demarcate the quantum of evidence necessary in such a case to go to trial, we merely decide that Williams's evidence is insufficient.